IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 9, 2001

## STATE OF TENNESSEE v. DAVID PLUNK

**Direct Appeal from the Criminal Court for Crockett County**
**No. 2939     L.T. Lafferty, Senior Judge**

---

**No. W2000-00526-CCA-R3-CD  - Filed February 26, 2001**

---

A Crockett County jury convicted the defendant of premeditated first degree murder, and the trial court sentenced him to life imprisonment.  In this appeal as a matter of right, the defendant challenges (1) the introduction of statements he made to officers, and (2) the sufficiency of the evidence.  After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Charles S. Kelly, Dyersburg, Tennessee (at trial) and Joseph S. Ozment, Memphis, Tennessee (at trial and on appeal), for the appellant, David Plunk.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; and Clayburn L. Peeples, District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was convicted of premeditated first degree murder and received a life sentence.  In this appeal, the defendant challenges (1) the introduction of statements he made to officers, and (2) the sufficiency of the evidence.  Upon our review of the record, we affirm the judgment of the trial court.

## I.  FACTS

The defendant and the victim, Mary Plunk, were former spouses.  On April 17, 1996, the defendant's nephew, Robert Phillips, visited the defendant's residence, and they went for a drive.

They approached the victim's residence, and the defendant stopped his vehicle to talk to the victim. The defendant and victim argued about their children and the victim's intention to move in with another man. After the defendant and victim completed their argument, the defendant said, "I'll get you and him, too." The defendant then squealed his tires driving away.

The defendant then drove back to his residence, and he ordered Phillips to remain in the vehicle. The defendant entered his residence and emerged approximately five minutes later with a pistol. The defendant transported Phillips to Phillips' residence and told him that "he was going to do something to make [Phillips] hate him." He then drove back to the victim's residence where he shot her seven times, thereby causing her death.

Ilene Turner, the victim's landlord, testified that she saw the defendant and the victim sitting together, but she did not disturb them. Later, she heard a noise she thought was fireworks, so she went to investigate. She found the victim lying on the floor and phoned 911.

The defendant fled the scene, was arrested in Benton County later that day, and was transported back to Crockett County. At the time of the defendant's apprehension, he possessed a black bag with approximately fifteen prescription bottles inside of it.

At 1:25 a.m. on April 18, 1996, the defendant signed a Miranda waiver and admitted to killing the victim, saying she was "jagging her jaws." The defendant gave another statement, subsequent to signing a Miranda waiver, at 3:30 p.m. on April 18th. In that statement, the defendant claimed he drove to the victim's residence in order to kill himself in front of her, but she called him a "dirty son of a bitch," so he killed her instead. On May 20, 1996, while being transported to the Veteran's Administration Hospital, the defendant told Officer Tim McCoy that he killed the victim because of his family, children, and "she just needed killing."

The state further offered the testimony of a clinical psychologist, Dr. Samuel Craddock, and a psychiatrist, Dr. Rokeya Farooque. Both Drs. Craddock and Farooque evaluated the defendant for a period of approximately 25 days in July of 1996.

Dr. Craddock testified that the defendant did not suffer from serious mental illness at the time of the murder; he was able to understand and appreciate the wrongfulness of his actions; he could form premeditation; he embellished and exaggerated symptoms of mental illness; the shooting was not due to post-traumatic stress disorder (PTSD); and he could understand the Miranda rights that the officers read him.

Dr. Farooque testified that at the time of the incident there was no serious mental illness, and the defendant understood the wrongfulness of his act. Dr. Farooque further stated that the defendant was capable of forming premeditation and did not suffer from a dissociative episode.

At trial, the defendant offered the testimony of his mother, Edith Plunk; his sister, Mary Norville; his daughter, Tammy Phillips; two acquaintances, Ron Teddleton and Donny Kail; a psychiatrist, Dr. Roy Lacoursiere; and a clinical psychologist, Dr. Dennis Wilson.

Edith Plunk and Mary Norville testified that the defendant returned from his military service in Vietnam "a different person" and has suffered mental problems. Norville and the defendant's daughter testified concerning the defendant's propensity for carrying a weapon, which was corroborated by Ron Teddleton and Donny Kail. Kail also testified that he and the defendant rode together to the Veteran's Administration Hospital in Memphis for mental treatment, and the defendant was medicated to the extent that he took 24 pills on the way. Kail further stated that the defendant's medicine put him in a "dream world," and "the only way you could tell it affected him was when he started slobbering and nodding off."

Dr. Lacoursiere's examination of the defendant revealed that the defendant had PTSD; a major depressive disorder; a somatoform disorder - a form of hypochondria; a personality disorder; a drug dependency; and a below average intelligence level. Although during direct examination Dr. Lacoursiere opined that the defendant did not premeditatedly shoot the victim, he admitted on cross-examination that he was unsure if the defendant was incapable of premeditation.

Dr. Wilson's examination of the defendant revealed that he suffered from PTSD, depersonalization disorder, major depression, polysubstance dependence, and a low average intelligence level. Wilson opined that the defendant suffered from a serious mental disease or defect, was unable to appreciate the wrongfulness of his conduct, and unable to form premeditation. On cross-examination, Wilson testified that the defendant was exposed to a lot of psychotherapy where he "undoubtedly picked something up" and was using "textbook words" to describe his condition.

## II. DEFENDANT'S STATEMENTS

The defendant alleges that his statements to officers were not voluntarily and knowingly given, and the trial court erroneously denied his motion to suppress. We disagree.

### A. Standard of Review

The trial court's determination at the suppression hearing that a confession was voluntary is presumptively correct on appeal. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). This determination is binding unless the evidence in the record preponderates against that finding. State v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999).

The fact that one suffers from certain mental deficiencies does not necessarily prevent that person from understanding and waiving constitutional rights. *See generally*, State v. Middlebrooks, 840 S.W.2d 317, 327 (Tenn. 1992); IV Wharton's Criminal Evidence § 643, p. 169 (14th ed. 1987).

A person with a mental deficiency may waive his Miranda rights, if that waiver was knowingly and voluntarily made. State v. Green, 613 S.W.2d 229, 233 (Tenn. Crim. App. 1980); Braziel v. State, 529 S.W.2d 501, 505-06 (Tenn. Crim. App. 1975). When determining whether an accused has voluntarily, knowingly and intelligently waived his Miranda rights, this court must consider the totality of the circumstances which existed when the accused waived these rights. Middlebrooks, 840 S.W.2d at 326; State v. Benton, 759 S.W.2d 427, 431 (Tenn. Crim. App. 1988). The totality of the circumstances must reveal an uncoerced choice and the required level of comprehension. State v. Blackstock, 19 S.W.3d 200, 208 (Tenn. 2000) (quoting State v. Stephenson, 878 S.W.2d 530, 545 (Tenn. 1994)). Where a defendant contends that his waiver of Miranda rights was not voluntarily or understandingly made, the court must consider such factors as the defendant's age, level of functioning, prior criminal justice experience, demeanor, responsiveness to questioning, possible malingering, and the manner in which the Miranda rights were explained. Blackstock, 19 S.W.3d at 208. However, no single factor is necessarily determinative. *Id*.

## B. Testimony at Suppression Hearing

At the suppression hearing, the defendant argued that he was incapable of knowingly and voluntarily waiving his Miranda rights because he had a mental defect and was under the influence of drugs. In furtherance of his claim, he offered testimony of Dr. Dennis W. Wilson who evaluated the defendant in October of 1996 and opined that the defendant's mental condition, brought about by the dissociative episode which caused him to kill the victim, rendered him unable to understand his Miranda rights. Furthermore, Dr. Wilson opined that if the defendant ingested valium prior to his Miranda waiver, then his mental condition would be further deteriorated. Wilson further testified that he examined the defendant only to determine his mental status at the time of the crime, but the defendant's dissociation would linger for a time after the shooting. Dr. Wilson conceded that the officers' observations of the defendant were relevant in determining the defendant's mental state.

The state offered the testimony of Assistant Chief Deputy Jim Knox, Investigator Jeff Sills, Alamo Police Chief Gary Skipper, Officer Tim McCoy, and Sheriff Neal Klyce - all of whom participated in the transport, booking, and/or questioning of the defendant. Knox testified that he knew the defendant for twelve years, and the defendant did not appear under the influence of an intoxicant and "appeared fine" during questioning. Sills testified that the defendant "appeared normal" and "appeared to be the same David Plunk that I've known since 1981." Skipper testified that during the defendant's second interrogation at approximately 3:30 p.m. on April 18th, he appeared sad but normal, and he did not appear under the influence of an intoxicant. Furthermore, Skipper testified the defendant talked normally, did not seem confused, and was not evasive. Skipper also knew the defendant for approximately twelve years prior to the incident.

Sheriff Klyce testified that he was present during the defendant's initial transport from Benton County. He testified that the defendant appeared normal during the transport. Klyce further stated that when he arrived at the Crockett County Sheriff's Department, the defendant appeared normal when he remanded the defendant to Sills and Knox for questioning. Although Klyce testified

-4-

that the defendant possessed a black bag with a "bunch of pill bottles," he said that the defendant never appeared under the influence.

## C. Trial Court Findings

The trial judge, Honorable L.T. Lafferty, filed a five-page order detailing his findings of fact and conclusions of law. The trial court found no coercion or intimidation by the law enforcement officers. The trial court specifically accredited the testimony of the officers as to the defendant's mental status in April 1996, finding the defendant "voluntarily, knowingly, and intelligently waived his Miranda rights." The trial judge specifically rejected the opinion of Dr. Wilson that the defendant was incapable of making an intelligent decision, noting the opinion was based upon an October 1996 evaluation.

## D. Analysis

The trial court was in a much better position than this court to evaluate the credibility of the witnesses. The trial court was not required to adopt the opinion of the clinical psychologist. There was ample evidence to support the trial court's findings and ample evidence to support its conclusion that the statements made during interrogation were voluntary, knowing, and intelligent. We find no basis to disturb the ruling of the trial court.

Furthermore, we conclude that the statement given to Officer Tim McCoy on May 20, 1996, during transport to the Veteran's Administration Hospital was volunteered and not the product of custodial interrogation; thus, Miranda was not implicated. *See* State v. Goode, 956 S.W.2d 521, 524 (Tenn. Crim. App. 1997). Nevertheless, the statement must still be voluntary to pass a due process analysis. *See* Mincey v. Arizona, 437 U.S. 385, 398, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978); Raybin, **Tennessee Criminal Practice and Procedure** § 19.51 (1984). The trial court correctly concluded that this statement was also voluntary.


## III. SUFFICIENCY OF THE EVIDENCE

The defendant argues that the evidence was insufficient to sustain his conviction for premeditated first degree murder. Specifically, he alleges the state failed to prove premeditation. We disagree.

## A. Standard of Review

When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a

combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,18 (Tenn. Crim. App.1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995).

## B.  Analysis

The defendant alleges that subsequent to his argument with the victim, he was in a state of passion due to PTSD, drug dependency, and dissociation disorder; and thus, he could not form premeditation or the intent to kill the victim. We conclude the jury could properly reject this contention.

The applicable definition of first degree murder is, "[a] premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). Premeditation necessitates "a previously formed design or intent to kill," State v. West, 844 S.W.2d 144, 147 (Tenn. 1992)(citations omitted), and "an act done after the exercise of reflection and judgment . . . [meaning] that the intent to kill must have been formed prior to the act itself." Tenn. Code Ann. § 39-13-202(d). It also requires that the accused be "sufficiently free from excitement and passion as to be capable of premeditation." *Id.*

The element of premeditation is a question of fact to be determined by the jury. State v. Suttles, 30 S.W.3d 252, 261 (Tenn. 2000). Although the jury may not engage in speculation, it may infer premeditation from the manner and circumstances of the killing. State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997); State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995). Our Supreme Court delineated several circumstances that may be indicative of premeditation, including the use of a deadly weapon upon an unarmed victim, the fact that the killing was particularly cruel, declarations of the intent to kill the victim by the defendant, the making of preparations before the killing for the purpose of concealing the crime, and calmness immediately after the killing. *See* Bland, 958 S.W.2d at 660.

The jury could infer premeditation from the defendant's actions. The defendant argued with the victim prior to her death and stated an intention to "get" the victim. After the argument, the defendant drove to his residence, armed himself, returned Phillips to his residence, and told Phillips that he "was going to do something to make [Phillips] hate him." He then drove to the victim's home, shot the unarmed victim seven times, and fled the scene. Additionally, the defendant, in an unsolicited statement, stated he killed the victim because of his children, his mother, and "she just needed killing." We also note that whether the defendant was intoxicated or impaired to the degree

to be incapable of premeditation was a question for the jury. <u>State v. Phillips</u>, 728 S.W.2d 21, 24 (Tenn. Crim. App. 1986). It was within the jury's prerogative to reject the defendant's contention.

Drs. Craddock and Farooque performed an extensive 25-day examination on the defendant. They testified that the defendant, at the time of the murder, did not suffer any serious mental illness that would make him unable to appreciate the wrongfulness of his actions. They also concluded that he was able to form premeditation.

Accordingly, the jury could reasonably conclude that the defendant killed the victim intentionally and with premeditation. This issue is without merit.

## CONCLUSION

Based upon the foregoing, we conclude (1) the trial court properly admitted the defendant's inculpatory statements; and (2) the evidence is sufficient to sustain the defendant's conviction for premeditated first degree murder. Thus, the judgment of the trial court is affirmed.

_____
JOE G. RILEY, JUDGE