IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 2, 2006

## STATE OF TENNESSEE v. JOHN GREEN

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-01893    Arthur T. Bennett, Judge**

_____

**No. W2005-01809-CCA-R3-CD  - Filed October 31, 2006**

_____

John Green, the defendant, appeals his jury convictions of first degree felony murder and aggravated robbery (Class A felony). The defendant was sentenced to life in prison for first degree felony murder with a ten-year concurrent sentence for aggravated robbery. The defendant presents two issues: insufficient evidence to support the convictions, and error by the trial court in failing to suppress the defendant's statements. We conclude from our review that the evidence was sufficient and that the defendant's statements were properly admitted. The judgments of conviction are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. McLIN, JJ., joined.

Robert Wilson Jones, District Public Defender, and Garland Ergüden and Dianne Thackery, Assistant Public Defenders, for the appellant, John Green.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Reginald Henderson and Paul Hagerman; Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

This case from Shelby County concerns an aggravated robbery and murder of a pizza deliveryman, John Stambaugh, III, by the defendant and his co-defendants, Louie Holloway and Eronia Neal, on September 8, 2002. That night, Ms. Rebecca DeVries had ordered pizza delivered to her apartment building at 2188 Young. The deliveryman arrived at approximately 10:45 p.m., and Ms. DeVries met him in the parking lot. She observed another car pull behind the delivery vehicle. Later that evening Ms. DeVries was told that the delivery vehicle was still in the parking lot with its motor running. She returned to the vehicle and found the driver inside and the doors locked. The

driver was immobile with his head tilted back. The police were notified and responded within five minutes. Paramedics from the Memphis Fire Department found that the victim was without any signs of life. Eronia Neal was fourteen at the time of this murder. In his testimony he admitted assisting the defendant and co-defendants in these offenses. The co-defendant, Holloway, was dating Neal's older sister. Neal obtained a stolen car that was kept in his neighborhood. The defendant drove the stolen car with Louis Holloway, Neal, and Charles Nelson, a juvenile, as passengers. Neal stated they were driving around "looking for somebody to rob, or whatever." The defendant pulled behind the victim's car. Holloway, armed with a shotgun, went to the driver's side. The defendant, armed with a rifle, and Nelson went to the passenger side. Holloway demanded money from the victim. Nelson reached in and took the money. Neal stated that he heard a noise like a shotgun blast. The defendant, Holloway, and Nelson returned to the stolen vehicle. The defendant and Holloway removed latex gloves from their hands. The defendant confronted Holloway over why he had shot the victim. Holloway claimed that the defendant had mentioned his name. Neal stated that the two guns belonged to Holloway. He further admitted that his role in the robbery was to act as a lookout.

On October 25, 2002, the defendant gave a transcribed statement to Sergeant T. Sims[1] and Detective Fred Williams. The defendant, in this statement, said that he and Holloway were on foot alone when they robbed the victim. The defendant stated that Holloway shot the victim once using a sawed off shotgun and that they ran from the scene.

On October 28, 2002, the defendant gave a second transcribed statement to Sergeant T. Sims and Sergeant James Fitzpatrick. In this statement the defendant admitted driving a stolen four-door Buick to the scene of the offenses where he blocked the delivery vehicle. He stated that Holloway, Nelson, and "King" were with him. Holloway shot the victim with a sawed off shotgun. The defendant stated that Holloway claimed to have shot the victim because the defendant had used Holloway's first name during the robbery. The defendant stated he took the shotgun to "King's" residence on Nathan on Holloway's demand. According to the defendant, Holloway dated "King's" sister who was pregnant by Holloway.

Officer Steven Cody Wilkerson testified that a consent search was executed at 3202 Nathan on October 16, 2002. A loaded, sawed off shotgun with a shortened stock was found in an oven. The defendant had delivered the shotgun that day. Holloway was present when the residence was searched. A subsequent search of Holloway's residence at 3231 Princeton was conducted by Detective Michael Jauer and other officers. A pistol and a 30.06 Remington rifle were found there.

Special Agent Shelly Betts, a forensic scientist with the Tennessee Bureau of Investigation, had examined the shotgun. Agent Betts identified it as a Harrington & Richardson .12 gauge with the barrel sawed off and the stock shortened. The shotgun was found to be in normal operating condition with the safety features functional.

---

[1] Sergeant Sims died accidentally after the defendant's suppression motion hearing and before the trial of the defendant.

Dr. O. C. Smith, an expert in forensic pathology, testified as to the victim's autopsy results. Dr. Smith determined that the victim died of a shotgun blast to the chest which he estimated was fired from a distance of three to six feet. Dr. Smith stated the shotgun seized from Holloway could have produced the fatal wound but other weapons could have produced a similar pattern.

The defendant, after voir dire, chose not to testify and presented no other evidence in his defense. Based on the evidence, the jury convicted the defendant of felony murder, criminally negligent homicide, and two counts of aggravated robbery. At the sentencing hearing, the criminally negligent homicide conviction was merged with the felony murder, and the two aggravated robbery convictions were merged.

On appeal, the defendant presents two issues: that the evidence was insufficient to support the convictions, and that the trial judge erred in failing to suppress the defendant's statements to police.

### Sufficiency of the Evidence

When considering a sufficiency question on appeal, our standard of review is "whether considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002). On appeal, the State is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom. State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000). A guilty verdict by the trier of fact resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). "Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court does not re-weigh or re-evaluate the evidence." State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003) (citing Bland, 958 S.W.2d at 659).

First degree felony murder is "[a] killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, act of terrorism, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy[.]" T.C.A. § 39-13-202(a)(2) (2006).

Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear. T.C.A. § 39-13-401(a). It becomes aggravated robbery when it is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or (2) where the victim suffers serious bodily injury." T.C.A. § 39-13-402(a)(1), (2).

Our review of the sufficiency reveals ample evidence supporting the defendant's convictions. Both the defendant's statement and Eronia Neal's testimony showed that the defendant was a willing participant in the aggravated robbery of the victim. The primary differences between the two

versions was the defendant's attempts to minimize the extent of his involvement. Even the defendant agreed that he was driving the stolen vehicle and used it to block the victim's car from an escape. Rebecca DeVries' testimony of a car pulling behind the victim's vehicle corroborated Neal's and the defendant's accounts. According to Neal, the defendant participated in the aggravated robbery by going to the victim's passenger side window armed with a rifle. The victim's death from the shotgun blast fired by the co-defendant Holloway provided sufficient evidence to prove the defendant guilty of first degree felony murder beyond a reasonable doubt.

## Defendant's Statements

In the remaining issue, the defendant asserts error by the trial court in its refusal to suppress the two statements given by the defendant. The defendant contends that the statements were involuntarily given and that his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, section 9 of the Tennessee Constitution were violated.

The trial court's determination at the suppression hearing that a confession was voluntary is presumptively correct on appeal. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). This determination is binding unless the evidence in the record preponderates against that finding. State v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999). When determining whether an accused has voluntarily, knowingly, and intelligently waived his Miranda rights, this court must consider the totality of the circumstances which existed when the accused waived these rights. State v. Middlebrooks, 840 S.W.2d 317, 326 (Tenn. 1992); State v. Benton, 759 S.W.2d 427, 431 (Tenn. Crim. App. 1988). The totality of the circumstances must reveal an uncoerced choice and the required level of comprehension. State v. Blackstock, 19 S.W.3d 200, 208 (Tenn. 2000) (quoting Stephenson, 878 S.W.2d at 545). Where a defendant contends that his waiver of Miranda rights was not voluntarily or understandingly made, the court must consider such factors as the defendant's age, level of functioning, prior criminal justice experience, demeanor, responsiveness to questioning, possible malingering, and the manner in which the Miranda rights were explained. Blackstock, 19 S.W.3d at 208. However, no single factor is necessarily determinative. Id.

The defendant was nineteen when he testified at his suppression hearing. He stated that he did not recall being read his Miranda advisory warnings prior to his questioning. He claimed that he requested of Sergeant Sims that he be allowed to call a specific attorney. According to the defendant, Sergeant Sims told him he could not contact an attorney until he told Sergeant Sims what he wanted to know. The defendant stated that although he completed twelve years of school, he was in resource classes from the second grade through the tenth grade in the areas of English and reading comprehension. The defendant said that he was pressured into giving the first statement and, in the second statement, acted as a "yes man" to the interrogator's questions. The defendant acknowledged that he had previous experience with police questioning associated with interrogations.

Sergeant Sims testified at the defendant's suppression hearing. He stated that, prior to the first interview on October 25, he read the Miranda rights to the defendant and then had the defendant read them to him. The defendant's signature appears on the waiver of rights form. Detective Fred

Williams was with Sergeant Sims during the first interview session. According to Sergeant Sims, the defendant did not appear confused and nothing was observed indicating any physical or mental defects concerning the defendant.

Sergeant Sims stated that, prior to the second interview, the defendant initialed that he understood his Miranda rights and wished to make a statement. Sergeant Fitzpatrick was present during a portion of the second interview. Sergeant Sims denied that the defendant ever requested the right to call or speak to an attorney. In both interviews, the defendant was shackled to his chair. The first transcribed statement started at 2:45 p.m. and ended at 3:40 p.m. The time of the second statement was from 8:30 p.m. until 10:10 p.m. The defendant was "preinterviewed" prior to both transcriptions, but Sergeant Sims did not recall the length of these sessions. Sergeant Sims stated that food and drink were offered the defendant on each hour.

The trial court, in his ruling, accredited the testimony of Sergeant Sims that the defendant did not request a lawyer. The trial court found that the defendant was advised of his rights and understood the process. The trial court acknowledged that the officers may have applied pressure in questioning but that it was not undue pressure that overwhelmed the defendant's will.

Reviewing the issue under a totality of the circumstances, we conclude that the defendant knowingly and voluntarily made the two statements which were the object of the defendant's motion to suppress. At the time of the interviews, the defendant was within days of being twenty years old. The defendant had completed twelve grades of school. Although he had been in special education for much of this time, he finished his last two years in the standard curriculum. The defendant admitted that he had prior experience with police interrogation and had previously been administered his Miranda rights. The circumstances surrounding the defendant's questioning, including his being shackled to a chair, were not unduly coercive. We conclude that the defendant voluntarily waived his right against self-incrimination. The statements were freely given and absent any undue coercion. In summary, the evidence does not preponderate against the trial court's refusal to suppress the defendant's statements.

Conclusion

We conclude from our review that the evidence clearly supported the defendant's convictions for first degree felony murder and the underlying felony of aggravated robbery. Furthermore, we have determined that the defendant's statements to police were voluntarily given and properly admitted into evidence. The judgments of conviction are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE