IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2006

### STATE OF TENNESSEE v. JAMES C. OSBORNE

**Direct Appeal from the Criminal Court for Wilson County**
**No. 02-1340     J. O. Bond, Judge**

---

**No. M2005-00893-CCA-R3-CD - Filed September 7, 2006**

---

The defendant, James C. Osborne, was convicted by a jury of rape, a Class B felony. The defendant was sentenced as a Range I offender to twelve years at 100%. He now appeals his conviction and sentence. After thorough review, we conclude that no reversible error is present. The judgment of conviction is hereby affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. DAVID G. HAYES, J., filed a separate concurring opinion.

Comer L. Donnell, District Public Defender, and William K. Cather, Assistant Public Defender, for the appellant, James C. Osborne.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Robert N. Hibbett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

The defendant was indicted for aggravated rape and theft of property by a Wilson County grand jury. The jury found the defendant guilty of the lesser included offense of rape, and a sentence of twelve years at 100% was imposed. In this appeal of right of his conviction and sentence, the defendant presents the following issues:

(1)    The evidence was insufficient to support the conviction, and the trial court erred in failing to require an election of offenses;

(2)    The indictment for aggravated rape did not confer jurisdiction on the trial court for a conviction of rape;

(3) The trial court erred in instructing the jury on the appropriate mens rea for rape;

(4) The trial court erred in failing to suppress the defendant's statement to police; and

(5) The trial court erred in sentencing.

Following a review of the issues herein and the record as a whole, we conclude that no reversible error is present. We affirm the judgment of conviction.

Sarah Bridges testified that she had hosted a Halloween party at her house on October 31, 2002. Miss Bridges had been friends with the victim since high school. The defendant attended the party in the company of another woman. Later, the defendant argued with another male guest, and the victim offered the defendant a ride home.

The victim, C.G., was nineteen at the time of the offense. She attended the Halloween party unaccompanied. She met the defendant for the first time on this occasion. She stated that she offered the defendant a ride home in order to prevent a fight between the defendant and another male guest. While the defendant was driving, the victim said he began rubbing her legs. She struck his hand and moved it when he moved it up her leg. The defendant asked her to spend the night with him at his mother's house. The victim refused, and the defendant stopped the car. The defendant climbed over the console, forced the victim's legs up and removed her overalls and panties. The defendant attempted to penetrate her there while the victim was screaming and crying. The victim said she suggested they get out of the car because the defendant was hurting her. Upon exiting the car, the defendant removed the remainder of the victim's clothing except her shoes and socks. The defendant placed the victim on the car hood and jerked her down by her legs. The victim said she continued to scream and cry for the defendant to stop. The victim offered to perform fellatio if the defendant would not penetrate her. The fellatio was brief, and the defendant told her to bend over the hood. The victim struggled while the defendant held her by the neck and stifled her screams with a hand over her nose and mouth. The victim said the defendant briefly penetrated her before having her bend over. The victim saw car lights emerging from a driveway and broke away, running for the car. The car did not stop. The defendant gathered the victim's clothing and left the scene in the victim's car. The victim came to a house where she was admitted, given clothes, and the incident was reported to law enforcement. The victim showed the responding officer where the rape had occurred. Her panties were found at the scene. The victim was taken to the hospital for the rape examination. The victim stated that she had paid $500 for her car and had not given the defendant consent to take the vehicle.

On cross-examination, the victim testified that she had consumed two twelve-ounce beers at the party. She denied any conversation with the defendant about rough sex prior to the rape. She said she had told the defendant that his penis was ". . . too big, that it would not go in." The victim testified that she was penetrated once while in the car and again on the car hood.

Wayne Phillips testified that he lives at 2964 Holmes Gap Road near Watertown. He was wakened in the early morning hours by the victim banging on his door. The nude victim told him she had been raped. Mr. Phillips gave her clothing and called the Wilson County Sheriff's Department.

Detective Captain Don Hamblen of the Wilson County Sheriff's Department investigated this case. On November 1, 2002, he and another officer went to the residence of the defendant's mother, Sherry Osborne, on Holmes Gap Road. The officers saw the victim's vehicle in the woods near the residence. Ms. Osborne was contacted at her work and gave permission for the officers to enter the residence. The defendant was found hiding in the attic compartment. The victim's keys were found in the defendant's possession.

Detective Chris Hodge of the Wilson County Sheriff's Department interviewed the victim at Wayne Phillip's house. He described the victim as very upset, crying, and with red marks on her neck. When the victim took the officers to the crime scene, the victim's panties were found in the roadway. The remainder of her clothes were found in her car when it was discovered.

Detective Hodge interviewed the defendant on November 1, after giving him the Miranda advisory warnings. The defendant related that he had drank heavily at the party and had argued with a male guest. The victim offered the defendant a ride, and the defendant drove her car. According to the defendant, he began rubbing on the victim and talking about sex. The victim told him that "she likes it rough and hair pulled." The defendant stopped the car on Holmes Gap Road and disrobed the victim while inside the car. The victim suggested moving outside. When the victim saw the defendant's penis, she said it was too big. The defendant said he was already excited and penetrated her vagina and held her arms down against the car. According to the defendant, the victim "said stop a few times but I didn't." The victim broke away and ran toward a car's headlights. The defendant drove to his mother's house and hid the victim's car in the woods. The defendant said, "I realized what I did was wrong and I'm sorry for that."

On cross-examination, Detective Hodge affirmed that the victim's clothes were not torn and that there were no scratches on the defendant.

The State rested, as did the defense, after voir dire of the defendant.

Sufficiency of the Evidence

We will consider first the defendant's contention that no rational trier of fact could have found the defendant guilty of rape under Tennessee Code Annotated section 39-13-503(a). The defendant argues that the sexual penetration was with the victim's consent or, alternatively, that the defendant did not know that the victim was not consenting. Our review of the record indicates there was ample evidence to support the defendant's conviction.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d

542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A conviction for rape requires proof of sexual penetration of a victim by the defendant accompanied by any of the following circumstances:

(1)      Force or coercion is used to accomplish the act;

(2)      The sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent.

T.C.A. § 39-13-503(a) (1997).

The victim testified that the defendant forcibly penetrated her despite her protestations and demands for him to stop. The defendant, in his statement, admitted that he held the victim down and penetrated her in disregard to her objections. The defendant's subsequent actions of fleeing from the scene and of hiding the victim's car and himself belied any pretense to the defendant's claim of consensual sex. Given such proof, a rational jury would be fully justified in finding the defendant guilty of rape.

As a corollary to the sufficiency issue, the defendant contends that the State failed to make an election of the offense on which it relied to obtain the guilty verdict. The election was neither demanded at trial or noted in the defendant's motion for a new trial. The issue is subject to being considered as waived pursuant to Tennessee Rule of Appellate Procedure 3(e); however, this court may consider plain error upon the record under Rule 52(b) of the Tennessee Rules of Criminal Procedure, State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000). In order to review an issue under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. Smith, 24 S.W.3d at 282.

The defendant argues that the jury could have selected any of three penetrations that were referenced in the testimony. The victim testified that while the defendant was trying to penetrate her vaginally, she offered to perform oral sex to prevent the vaginal penetration. According to the victim, the fellatio was brief, "[t]hat went on for a second and I stopped." On her direct testimony, the victim testified to one vaginal penetration that occurred on the hood of the car. The defendant's counsel elicited testimony during cross-examination of the victim that the defendant also vaginally penetrated her while in the car, "just barely," as well as on the hood.

The defendant now contends that due to the failure to elect an offense, the issue of unanimity is in doubt. The State points to the record that reflects that although no formal election was made, the prosecution, in argument, concentrated solely on the defendant's vaginal penetration on the car hood, the same as admitted by the defendant in his statement. While the emphasis was placed on

the incident of vaginal penetration, nevertheless, there was proof of two other discrete acts of penetration.

The requirement of an election of offenses exists even though the defendant has not requested such. See Burlison v. State, 501 S.W.2d 801, 804 (Tenn. 1973). The most important reason for the election requirement is to ensure that the jury deliberate over and render a verdict on the same offense. State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999). The right of the defendant to a unanimous verdict has been characterized as "fundamental, immediately touching on the constitutional right of the accused. . . ." Burlison, 501 S.W.2d at 804. In State v. Shelton, 851 S.W.2d 134, 137 (Tenn. 1993), citations omitted, our supreme court observed:

> [T]here should be no question that the unanimity of twelve jurors is required in criminal cases under our state constitution. A defendant's right to a unanimous jury before conviction requires the trial court to take precautions to ensure that the jury deliberates over the particular charged offense, instead of creating a "patchwork verdict" based on different offenses in evidence.

One of the elements of rape is "unlawful sexual penetration of a victim by the defendant or of the defendant by a victim." T.C.A. § 39-13-503(a) (1997). The element of "unlawful sexual penetration" means "sexual intercourse, cunnilingus, fellatio, anal intercourse or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening of the victim's, the defendant's, or any other person's body. . . ." T.C.A. § 39-13-501(7) (1997).

There was proof in this case that the defendant penetrated the victim vaginally both while in the vehicle and again outside the vehicle. The victim also testified to volunteering to perform fellatio on the defendant in order to avoid vaginal penetration. Under the circumstances, the victim's "voluntariness" could have been construed as coerced. Each of these acts, though close in time, were discrete events and met the definition of unlawful sexual penetration for the offense of rape. Id.

State v. Phillips, 924 S.W.2d 662 (Tenn. 1996), in the context of a double jeopardy analysis, provided guidance on resolving whether acts were one or multiple acts. The following factors were provided:

(1)     the nature of the act;
(2)     the area of the victim's body invaded by the sexually assaultive behavior;
(3)     the time elapsed between the discrete conduct;
(4)     the accused's intent, in the sense that the lapse of time may indicate a newly formed intent to again seek sexual gratification or inflict abuse; and
(5)     the cumulative punishment.

Id. at 665.

We are also aware that "although separate acts of intercourse may be so related as to constitute one criminal offense, generally rape is not a continuous offense, but each act of intercourse constitutes a distinct and separate offense." Id. at 664 (citation omitted). "[A]n accused may be

convicted of more than one offense when the rape involves separate acts. . . ." State v. Burgin, 668 S.W.2d 668, 670 (Tenn. Crim. App. 1984).

In light of the foregoing analysis, we are compelled to conclude that the trial court's failure to require an election of offenses was plain error. That conclusion does not, however, end our inquiry. As noted previously, the indictment alleged a single act of aggravated rape. The prosecution in its opening argument, questioning at trial, and during closing argument focused single-mindedly on the vaginal penetration which occurred on the car hood. It was this act which the defendant admitted. The defense elicited the testimony during cross-examination of the slight penetration which occurred in the car. The defense also had the victim clarify that there was oral penetration, placing emphasis to the act formerly mentioned incidentally by the victim during her direct testimony.

The State prosecutor, in opening argument, referred only to a single act of penetration which occurred on the car hood. The prosecution argued also that the passing car interrupted the defendant's actions and belied the defendant's primary defense that the sex was consensual. The defense argued that absence of vaginal tearing indicated consent by the victim.

In closing argument, the prosecutor again focused on a single act of penetration and attempted to rebut the defendant's claim of consensual sex. The prosecution emphasized how the victim presented herself naked at a nearby house and the fact that the defendant left the scene, secreted the victim's car, and attempted to hide himself when authorities searched his mother's home. The prosecutor also emphasized the defendant's statement that he did penetrate the victim on the car in spite of her demands to stop. No reference was made to other penetrations.

The defendant, in closing argument, emphasized his central defense which was that it was consensual sexual intercourse or that the defendant reasonably believed it to be consensual.

Whenever a jury has multiple events from which to choose to convict for a single alleged act, an election of offenses should be required by the trial court. Shelton, 851 S.W.2d at 137. This is a responsibility of the trial court and is not dependent on a request by the defendant. Kendrick, 38 S.W.3d at 569. Failure to require the election is reversible error unless determined to be harmless error beyond a reasonable doubt. Shelton at 138.

Under the facts of this case, we view the error as harmless beyond a reasonable doubt. The State's entire and consistent focus of the aggravated rape count was the vaginal penetration occurring on the car hood. The defendant's admissions furnished corroboration to this incident. The other references to penetrations were tangential and were elicited by the defendant. The proof, in sum, was overwhelming in support of the conviction of rape. The defendant has not demonstrated that he is entitled to relief on this issue.

Indictment

In the next issue, the defendant contends that the indictment for aggravated rape did not confer jurisdiction on the trial court for a conviction of rape.

The indictment charging the defendant with aggravated rape reads as follows:
The Grand Jurors of Wilson County, Tennessee, duly empanelled [sic] and sworn upon their oath present that James C. Osborne on November 1, 2002 in Wilson County, Tennessee, and before the finding of this indictment, unlawfully did intentionally, knowingly, or recklessly engage in unlawful sexual penetration of [C.G.], and James C. Osborne caused bodily injury to [C.G.], in violation of Tennessee Code Annotated § 39-13-502, . . .

The essence of the defendant's argument is that the indictment failed to give notice of the statutory circumstances of the use of force or coercion, that the penetration was accomplished without the consent of the victim, and that the defendant knew or had reason to know at the time of the penetration that the victim did not consent.

"Generally stated, an indictment is valid if it provides sufficient information: (1) to enable the accused to know the accusation to which answer is required; (2) to furnish the court adequate basis for the entry of a proper judgment; and (3) to protect the accused from double jeopardy." State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997). The statutory prescription for an indictment is as follows:
The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment."
T.C.A. § 40-13-202 (2005). Attacks upon indictments are now approached "from the broad and enlightened standpoint of common sense and right reason rather than from the narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding." Id. at 728 (quoting United States v. Purvis, 580 F.2d 853, 857 (5th Cir. 1978) (citing Parsons v. U.S., 189 F.2d 252, 253 (5th Cir. 1951).

The relevant statutory sections defining rape are as follows:
(a)    Rape is unlawful sexual penetration of a victim by the defendant or of the defendant by a victim accompanied by any of the following circumstances:
    (1)    Force or coercion is used to accomplish the act;
    (2)    The sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent.
T.C.A. § 39-13-503(a)(1)(2) (2003).

The relevant statutory sections defining aggravated rape are as follows:

(a)    Aggravated rape is unlawful sexual penetration of a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:

(1)    Force or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon;

(2)    The defendant causes bodily injury to the victim.

T.C.A. § 39-13-502(a)(1)(2) (2003).

The defendant argues that he was without notice in the indictment that the sexual penetration was without the consent of the victim and that he had reason to know at the time of penetration of the lack of consent. We are unpersuaded by this argument. A fair reading of the statutes codifying aggravated rape and rape demonstrates that both require an element of overcoming the victim's will and necessarily involving a lack of consent.

Consent has long been recognized in Tennessee as a defense to rape except when the victim is underage or suffers a mental defect such as to render consent ineffective. The defendant based his defense on the argument that the defendant was receiving "mixed signals" which he interpreted as consent by the victim. The following excerpt from the defendant's closing argument is demonstrative:

This is a case about when does no mean no? I submit to you that you would have to conclude at the end of this case that no does not always mean no. You're talking here about criminal culpability, guilt of a crime, this requires you to decide that he intentionally, knowingly or recklessly penetrated her against her will. It requires you to decide what was in Mr. Osborne's mind with regard to the actions he was taking. The issue here is not did she want it or did she not, okay? She's testified today that she didn't. The issue is under the circumstances that night did he know or should he have known that she didn't want it.

In our view, the language of the indictment provided adequate notice to the defendant and the trial court of the charged offense and protected the defendant from double jeopardy. Furthermore, the indictment form complies with Tennessee Code Annotated section 40-13-202.

Jury Instructions

The defendant alleges in his next issue that the trial court's inclusion of "criminal negligence" in its listing of culpable mental states resulted in an unreliable verdict. The offending instruction was as follows: "A person commits an offense who acts intentionally, knowingly, recklessly or with criminal negligence, as the definition of the offense requires, with respect to each element of the offense."

This quoted portion of the jury instruction, however, was in the early part of the instructions and was not applied to the requirements for conviction for aggravated rape, rape, or the other lesser

-8-

included offenses. Furthermore, the limiting phrase "as the definition of the offense requires" would avoid the confusion which the defendant contends caused an unreliable verdict. We do not agree that the portion objected to by the defendant was error.

As the State points out in its brief, the trial court did issue an erroneous instruction by stating that the defendant could be convicted for aggravated rape or rape upon a finding that the defendant acted "recklessly." This court in State v. Weltha Womack, No. E2003-02332-CCA-R3-CD, 2005 Tenn. Crim. App. LEXIS 2, 29 (Tenn. Crim. App. at Knoxville, Jan. 4, 2005), held that aggravated rape is a nature of conduct crime limiting the culpable mental states to "intentional" and "knowing." Because rape also requires sexual penetration, it also is a nature of conduct crime requiring the same mental states. The submission of recklessness as a mental state lowered the State's burden of proof and constituted error.

In the case at hand, the defense failed to make a contemporaneous objection and did not include the issue in the motion for new trial. Ordinarily this issue would be considered waived pursuant to Tennessee Rule of Criminal Procedure 52(b). As previously noted, five factors must be considered to determine if "plain error" is present: (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the issue is necessary to do substantial justice. Smith, 24 S.W.3d at 282.

After a review of the entire record, we are unconvinced that the error of the trial court prejudiced the defendant by affecting the outcome of the trial. The defendant's contention was that he engaged in the penetration of the victim in the belief that he had consent. The evidence presented demonstrated that the defendant could only have had an intentional or knowing mens rea. Nothing in the record supported the possibility of sexual penetration by recklessness. There being no substantial right of the defendant's affected, the issue does not qualify for plain error analysis and is waived.

## Motion to Suppress

The defendant next asserts that the trial court erred in refusing to suppress the defendant's confession. The defendant contends that due to his intoxication, his waiver of Miranda rights was not knowingly, intelligently, and voluntarily waived. The State contends that the denial of the defendant's suppression motion was proper.

The trial court's determination at the suppression hearing that a confession was voluntary is presumptively correct on appeal. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). This determination is binding unless the evidence in the record preponderates against that finding. State v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999).

When determining whether an accused has voluntarily, knowingly, and intelligently waived his Miranda rights, this court must consider the totality of the circumstances which existed when the accused waived these rights. Middlebrooks, 840 S.W.2d at 326; State v. Benton, 759 S.W.2d 427, 431 (Tenn. Crim. App. 1988). The totality of the circumstances must reveal an uncoerced choice and the required level of comprehension. State v. Blackstock, 19 S.W.3d 200, 208 (Tenn. 2000) (quoting State v. Stephenson, 878 S.W.2d 530, 545 (Tenn. 1994)). Where a defendant contends that his waiver of Miranda rights was not voluntarily or understandingly made, the court must consider such factors as the defendant's age, level of functioning, prior criminal justice experience, demeanor, responsiveness to questioning, possible malingering, and the manner in which the Miranda rights were explained. Blackstock, 19 S.W.3d at 208. However, no single factor is necessarily determinative. Id.

Detective Chris Hodge, in his testimony at the motion to suppress proceeding, stated that the defendant spoke clearly and was very observant. Detective Hodge said the defendant was "fine" and no signs of impairment by intoxication were noticed. According to Detective Hodge, the defendant "knew everything that was going on." The defendant was arrested at 3:36 p.m. on November 1, 2002, and signed the Miranda waiver at 4:30 p.m. on that date. The rape had occurred between 4:00 and 5:00 a.m. on November 1.

The defendant testified at the suppression hearing that he had no recollection of events after the party. He did not remember driving to his mother's house or being arrested in his mother's attic. The defendant stated his first recollection was waking on November 2, and wondering why he was dressed in orange clothing.

The trial court made no findings of fact on the record in denying the motion to suppress. This omission does not assist us in our review; however, it implicitly rejects the defendant's contentions and finds a knowing and voluntary waiver by the defendant. The facts do not preponderate against such a finding. Although the defendant professed to a loss of memory at the suppression hearing, his statement given on the afternoon of November 1 demonstrated clarity in his recollections of the evening before. The defendant was able to give specific information concerning the route he had driven from the party in Smyrna to his mother's address in Wilson County. He recalled conversation between himself and the victim, as well as details of the sexual encounter.

The State, as the prevailing party, is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). In light of Detective Hodge's testimony and the inconsistences demonstrated by the defendant, the trial court was entitled to reject the defendant's claim of amnesia by intoxication. We agree that the defendant's waiver was knowingly, intelligently, and voluntarily made.

## Sentencing

The defendant, in his last issue, asserts that the trial court erred in sentencing which resulted in a "disproportionate and unduly harsh sentence." This court's review of the sentence imposed by

the trial court is de novo with a presumption of correctness. T.C.A. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is de novo. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. T.C.A. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

If no mitigating or enhancement factors for sentencing are present, Tennessee Code Annotated section 40-35-210(c) provides that the presumptive sentence for most offenses shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. T.C.A. § 40-35-210(e); State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). No particular weight for each factor is prescribed by the statute as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Madden, 99 S.W.3d 127, 138 (Tenn. Crim. App. 2002); see T.C.A. § 40-35-210, Sentencing Commission Comments. Nevertheless, should there be no mitigating factors, but enhancement factors are present, a trial court may set the sentence above the minimum within the range. T.C.A. § 40-35-210(d); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

The convicted offense of rape is a Class B felony. The defendant was sentenced as a Range I offender. The presumptive sentence for such an offender is eight years prior to the application of appropriate enhancement and mitigating factors. The trial court applied two enhancement factors, found no mitigating factors, and imposed a sentence of twelve years at 100%. The enhancement factors found applicable were: (1) the defendant has a previous history of criminal convictions or

behavior; and (2) the offense was committed while the defendant was on probation as a result of a prior felony conviction. T.C.A. § 40-35-114(2) and 14(c).

The record reflected that the defendant had three convictions for driving on suspended license and one conviction for criminal impersonation, casual exchange of marijuana, and theft over $10,000. The defendant was on probation for the theft conviction at the time of this offense.

The defendant avers that the trial court abused its discretion in sentencing the defendant by "[going] to great lengths in looking for possible aggravating factors" while not searching for possible mitigating factors. We consider this a strange allegation when no suggested mitigating factors were filed on the defendant's behalf. Our review of the record indicates that the trial court followed the sentencing procedures and made findings of fact supported by the record. The applicability of two enhancement factors and the absence of mitigating factors support the defendant's sentence of twelve years.

## Conclusion

We have concluded from our review of the record that no reversible errors are present. Accordingly, we affirm the judgment of conviction.

_____
JOHN EVERETT WILLIAMS, JUDGE