# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 15, 2013

## STATE OF TENNESSEE v. WILLIE EARL BROWN, JR.

**Appeal from the Criminal Court for Davidson County**
**No. 2006-C-1909      Steve R. Dozier, Judge**

---

**No. M2012-01286-CCA-R3-CD - Filed May 23, 2013**

---

This appeal arises from the second jury trial in this matter. At his first trial, a Davidson County jury convicted appellant, Willie Earl Brown, Jr., of eleven counts of rape of a child, and he received a sentence of seventy-four years in the Tennessee Department of Correction. On appeal, this court reversed his convictions based on the improper admission of evidence relating to uncharged sexual conduct and remanded for a new trial. *See State v. Willie Earl Brown, Jr.*, No. M2009-00505-CCA-R3-CD, 2010 WL 4396490, at *1 (Tenn. Crim. App. Nov. 15, 2010). Following the remand, the parties amended the indictment to charge eight counts of rape of a child. At his second trial, the jury convicted him as charged, and the trial court sentenced him to an effective sentence of eighty years in the Tennessee Department of Correction. In this appeal, appellant argues that (1) the State's election of offenses failed to distinguish count seven from counts one and four; (2) the trial court erred by admitting the victim's forensic interview; (3) the trial court erred by imposing a harsher sentence after appellant's second trial; and (4) the trial court erred by imposing partial consecutive sentences. Following a thorough review of the record, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Dawn Deaner, District Public Defender; Jeffrey A. DeVasher (on appeal), Katie Weiss and J. Michael Engle (at trial), Assistant District Public Defenders, Nashville, Tennessee, for the appellant, Willie Earl Brown, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Smith, Associate Deputy Attorney General; David H. Findley, Senior Counsel; Victor S. Johnson, III, District Attorney General; Sharon Reddick and Allegra Montgomery, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I. Procedural History and Facts**

The offenses underlying this case occurred between July 25, 2003, and March 17, 2005. In 2006, a Davidson County grand jury indicted appellant for eleven counts of rape of a child, two counts of aggravated sexual battery, and one count of attempted rape of a child. During appellant's first trial, the State dismissed the aggravated sexual battery and attempted rape of a child charges. *See Willie Earl Brown, Jr.*, 2010 WL 4396490, at *8. Appellant was convicted of the remaining charges but successfully appealed. *Id.* at *1. Following this court's reversal of appellant's convictions, the parties amended the indictment to charge eight counts of rape of a child. The matter proceeded to trial on November 14 and 15, 2011. Because appellant has not challenged the sufficiency of the evidence in this case, we will set out only those facts pertinent to the issues presented in this appeal.

The victim, A.G.,[1] was born in 1994 and was seventeen years old at the time of the second trial. She testified that she had known appellant for most of her life. Appellant was her stepfather's brother. She recalled that her family lived one street over from appellant and his wife when they lived on Brickmont Drive. A.G. described the two-bedroom house. She said that she did not know of any time that appellant had his extended family stay with him there.

A.G. testified that appellant raped her several times at his house on Brickmont Drive. On the first occasion, he told her to come to the bedroom. When she complied, he told her to take off her pants, which she did. She said that she was lying "crossways" on the bed, and he was standing on the floor. Appellant "pulled his penis out" and "stuck his penis" inside her vagina. He ejaculated into a towel. A.G. testified that during the second incident on Brickmont Drive, appellant applied Orajel to her anus and penetrated her anus with his penis "[j]ust a little bit." She said that it hurt. She told him to stop, and he stopped. A.G. testified that the third incident occurred in the bathroom at the same house. She said that appellant sat on the toilet and had her sit on him. He penetrated her vagina with his penis and ejaculated into the toilet. A.G. testified that appellant also penetrated her vagina with his penis while she was lying on the bed in a different position but that the incident happened in "basically" the same way as the first incident, when appellant was standing on the floor and ejaculated into a towel. A.G. further testified that on "multiple" occasions, appellant sat on the bed and had her "put [her] mouth on his penis." She "had to suck" his penis, and he would ejaculate into a towel. A.G. said that "more than once" appellant put his fingers into her vagina. She recalled that his nails cut her. A.G. testified that appellant also penetrated

---

[1] It is the policy of this court to refer to victims of sexual offenses by their initials.

her with his penis when they were both on the bed. She said that sometimes "he would make [her] . . . scoot up where he could get on the bed and stick his penis in." A.G. further testified that on one occasion, appellant penetrated her while she was lying on the floor in the living room of the Brickmont Drive house. A.G. testified that appellant said that if she told anyone about what he was doing, she would get in trouble. She said that she was "kind of sort of [sic]" present when appellant and his wife "got in a fight or argument about something related to" her. She recalled an occasion when appellant "jumped up," and his wife "was crying" and asking, "[W]hy, why?" Appellant and his wife left, and when they returned, his wife "was fine." She said that his wife never spoke with her about the incident. A.G. testified that her family visited her grandmother in Mississippi one weekend, and she decided to stay there. She further testified that appellant called her aunt's telephone and her grandmother's telephone to talk to her. A.G. said that appellant "was trying to make sure [she] didn't tell." Her grandmother asked her why appellant kept calling her, and she told her grandmother that he was calling "because he [had] been touching" her. A.G. said that her grandmother took her to a doctor in Mississippi. A week later, A.G. returned to Nashville. She recalled speaking with Dawn Harper at the Child Advocacy Center. A.G. testified that she told Ms. Harper as much as she could remember and that she told her the truth.

On cross-examination, A.G. testified that she remembered that her stepfather lived with appellant for a time on Brickmont Drive. When asked whether it was true that specific members of appellant's extended family spent considerable time at appellant's house, A.G. responded that she did not remember if they had. A.G. said that appellant would send his wife and A.G.'s brothers "to go places" when he "did these things to" her. A.G. agreed that, at the time, she did not like appellant's wife. She said that the incidents happened in the evening when it was still light outside. A.G. agreed that her grandmother asked her whether appellant had touched her.

Dawn Harper, a forensic interviewer at the Nashville Children's Alliance, formerly the Nashville Child Advocacy Center, testified that she interviewed A.G. in November 2005. The State played a redacted video recording of the interview for the jury. In the redacted interview, A.G. told Ms. Harper that appellant "tried to go in . . . [her] butt" and that he made her put her mouth "on his thing."

For the defense, various members of appellant's extended family testified that they spent periods of time at his house on Brickmont Drive and recalled seeing A.G. there.

Appellant testified that he was a professional truck driver. During the time period covered by the indictment, he said that he was only home on the weekends. He testified that there was no truth to A.G.'s allegations.

Following the close of proof and deliberations, the jury convicted appellant as charged. The trial court held a sentencing hearing, after which it entered a written order sentencing appellant to twenty years for each conviction. The trial court ordered counts one, two, five, and six to be served consecutively and the remainder to be served concurrently, for an effective sentence of eighty years in the Tennessee Department of Correction.

**Analysis**

I. Election of Offenses

Appellant argues that the trial court erred by allowing his conviction for count seven of the indictment to stand. He contends that the State's election of offenses did not sufficiently distinguish the allegations made in count seven from the allegations made in counts one and four, and therefore, his conviction for count seven violated the protection against double jeopardy by punishing him multiple times for the same offense. The State responds that the evidence was sufficient to uphold a conviction for count seven.

As our supreme court has consistently held, "[W]hen the evidence indicates the defendant has committed multiple offenses against a victim, the prosecution must elect the particular offense as charged in the indictment for which the conviction is sought." *State v. Brown*, 992 S.W.2d 389, 391 (Tenn. 1999). The supreme court has also enumerated the purposes for the election of offenses:

> First, it ensures that a defendant is able to prepare for and make a defense for a specific charge. Second, election protects a defendant against double jeopardy by prohibiting retrial on the same specific charge. Third, it enables the trial court and the appellate courts to review the legal sufficiency of the evidence. The most important reason for the election requirement, however, is that it ensures that the jurors deliberate over and render a verdict on the same offense. This right to a unanimous verdict has been characterized by this Court as "fundamental, immediately touching on the constitutional rights of an accused . . . ."

*State v. Adams*, 24 S.W.3d 289, 294 (Tenn. 2000) (internal citations omitted).

In this case, the State's election of offenses, as applicable to appellant's argument were as follows:

> [(1)]   The Defendant engaged in penile[-]genital penetration with [A.G.] as she lay cross[-]ways on the bed in the Defendant's bedroom[,] and the

Defendant stood in front of her to penetrate her genitals with his penis and ejaculated into a towel.

. . . .

[(4)]   The Defendant engaged in penile[-]genital penetration with [A.G.] as she lay lengthwise on the bed in the Defendant's bedroom[,] and then Defendant stood in front of her to penetrate her genitals with his penis.

. . . .

[(7)]   The Defendant engaged in penile[-]genital penetration with [A.G.] on the bed in the Defendant's bedroom when he made her ["]scoot up onto the bed,["] and he got up onto the bed[,] also.

A.G. testified at trial that appellant penetrated her vagina with his penis while she was lying on the bed crossways, and appellant was standing on the floor. She also testified that he penetrated her while she was lying on the bed lengthwise, and he was standing on the floor. This testimony corresponds to counts one and four. She also testified that he penetrated her when they were both on the bed, and that testimony formed the basis of the State's election for the seventh count of the indictment.

As this court has previously held, "In cases involving sexual abuse of children, the victim may identify a particular incident by connecting it to the surroundings or circumstances of its occurrence." *State v. Hallock*, 875 S.W.2d 285, 293 (Tenn. Crim. App. 1993). A.G.'s testimony identified each incident of penile-genital penetration that occurred on appellant's bed by describing both her position and appellant's position. Her testimony regarding appellant's position during the incident elected by the State for count seven was that he was on the bed, which was notably different from that in counts one and four, when he was standing on the floor. We conclude that this difference established a separate offense. Therefore, appellant was not convicted twice for the same offense, and his argument to the contrary is without merit. He is not entitled to relief on this issue.

## II. Admission of Prior Consistent Statement

Appellant contends that the trial court erred by admitting a prior consistent statement of the victim in the form of a video recording of A.G.'s interview with Dawn Harper when A.G.'s credibility had not been impeached. The State responds that appellant's defense was centered on an attack on A.G.'s credibility, and thus, it was appropriate for the trial court to admit her prior consistent statement.

The determination of whether evidence is admissible at trial is a matter left to the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *State v. Dellinger*, 79 S.W.3d 458, 485 (Tenn. 2002); *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996). "Ordinarily, it is impermissible to corroborate a witness' testimony by evidence of the witness making prior consistent statements, absent an impeaching attack on that testimony." *State v. Meeks*, 867 S.W.2d 361, 374 (Tenn. Crim. App. 1993). An impeaching attack includes "insinuations of recent fabrication" or implications of a "deliberate falsehood." *State v. Benton*, 759 S.W.2d 427, 433 (Tenn. Crim. App. 1988). "[B]efore prior consistent statements become admissible, the witness' testimony must have been assailed or seriously questioned to the extent that the witness' credibility needs shoring up." *Id.* at 433-34.

This court has previously held that a recording of a victim's forensic interview was admissible as a prior consistent statement when the victim's credibility was attacked by the defendant's pursuit of a theme throughout the trial that the victim "had been programmed to recite a litany of allegations against the defendant." *State v. Albert R. Neese*, M2005-00752-CCA-R3-CD, 2006 WL 3831387, at *5 (Tenn. Crim. App., Dec. 15, 2006). In *Neese*, the defense theme was first broached during jury voir dire through the questions asked of the jurors and continued through opening statements, witness examinations, and closing statements. *Id.* at *5-6. In this case, appellant's defense was that the victim lied about the incidents. In his opening statement, appellant promised the jury that it would hear witnesses who contested A.G.'s version of events and opined that it might be difficult for the jury to "sit in judgment and say[] perhaps [A.G.] is not telling the truth." In his cross-examination of A.G., appellant asked whether it was true that several members of appellant's family had stayed with him for periods of time. That line of questioning set the stage for A.G.'s credibility to be impeached when those family members testified later. Appellant also attempted to impeach A.G.'s credibility through his cross-examination of the State's witnesses, including A.G.'s mother, grandmother, a social worker from Our Kids, a nurse practitioner from Our Kids, and the Metropolitan Nashville Police Department's lead investigator in this case. All of these attempts at impeachment occurred prior to the State's introduction of the prior consistent statement toward the end of its case-in-chief. In appellant's case-in-chief, appellant testified that A.G. was not truthful, and his witnesses presented testimony that contradicted parts of A.G.'s testimony. It is clear in this case that appellant's entire defense was an attack on A.G.'s credibility. As the *Neese* court noted, the attack does not have to be successful to admit the prior consistent statement. *Id.* at *6. Based on appellant's blatant attempts to undermine A.G.'s credibility throughout the trial, we conclude that it was not error for the trial court to admit her prior consistent statement. Appellant is not entitled to relief on this issue.

## III. Sentencing

In appellant's first challenge related to sentencing, he argues that the trial court was motivated by judicial vindictiveness when setting the length of his sentence. The State responds that the trial court merely followed this court's directive in *State v. Willie Earl Brown, Jr.*, No. M2009-00505-CCA-R3-CD, 2010 WL 4396490, at *20 (Tenn. Crim. App. Nov. 15, 2010), by sentencing appellant under the pre-2005 sentencing statutes. Appellant also contends that the trial court erred in its imposition of consecutive sentences.

## A. Standard of Review

The offenses in this case occurred between July 25, 2003, and March 17, 2005. Effective June 7, 2005, certain provisions of the 1989 Sentencing Act were amended to reflect an advisory, non-mandatory sentencing scheme. *See e.g.*, Tenn. Code Ann. §§ 40-35-114, -210 (2003 & Supp. 2005). The amended provisions apply to sentencing for criminal offenses committed on or after June 7, 2005, but offenses committed prior to June 7, 2005, are governed by prior law. A defendant who is sentenced after June 7, 2005, for offenses committed on or after July 1, 1982, may elect to be sentenced under the amended provisions of the Act by executing a waiver of ex post facto protections. *See* Pub. Acts, Ch. 353, § 18; Tenn. Code Ann. § 40-35-210 (2003 & Supp. 2005).

In this case, the offenses occurred prior to the effective date of the amendments. While appellant could have elected to be sentenced pursuant to these amended provisions, the record reflects that he did not execute an ex post facto waiver. Thus, the amended 2005 provisions are not applicable in appellant's case. Tennessee Code Annotated section 40-35-112(a)(1) mandated the sentencing range for a Range I, Class A felony as fifteen to twenty-five years. Section 40-35-210(c) set the presumptive sentence for a Class A felony at the midpoint of the range, or twenty years, if there were no enhancement or mitigating factors.

When an accused challenges the length and manner of service of a sentence, this court conducts a de novo review[2] on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). We condition this presumption upon "the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State*

---

[2] This standard of review should be applied in this case because appellant did not elect to be sentenced according to the law in effect after the 2005 amendments to the Sentencing Act. In *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012), the Tennessee Supreme Court modified the appellate standard of review of sentencing issues from "de novo with a presumption of correctness" to "abuse of discretion with a presumption of reasonableness."

*v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). We do not apply the presumption to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court predicated upon uncontroverted facts. *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); *State v. Bonestel*, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

In conducting a de novo review of a sentence, we must consider (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel about sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses; (h) any statements made by the accused in his own behalf; and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, 40-35-210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *Ashby*, 823 S.W.2d at 169.

The trial court held a sentencing hearing on February 10, 2012. At the hearing, the State presented appellant's pre-sentence report and requested that the testimony and exhibits from appellant's first and second trials and from the Rule 404(b) hearings held prior to the first trial be incorporated by reference for the purposes of sentencing. Appellant's sister testified on his behalf, and appellant also testified. Appellant stated that he did not have a criminal record, had been employed as a professional truck driver, and was innocent of the charges in his case. In a written order, the trial court sentenced appellant to twenty years for each conviction, which was the presumptive sentence, and ordered counts one, two, five, and six to be served consecutively. The remaining counts were to be served concurrently for an effective sentence of eighty years.

## B. Judicial Vindictiveness

Appellant contends that a presumption of judicial vindictiveness applies to his case because he received longer individual sentences and a longer total effective sentence following his second trial. He further contends that the trial court did not overcome the presumption by placing on the record any affirmative reasons for imposing greater sentences. Appellant relies on *North Carolina v. Pearce*, 395 U.S. 711, 726 (1969), in which the United States Supreme Court held that affirmative reasons for the imposition of a more severe sentence following a new trial must appear on the record to ensure that a trial court does not have a retaliatory motive.

In appellant's case, contrary to his assertion, the record is very clear concerning the reason for the increased length of sentences. The trial court, as it stated in its sentencing order, inappropriately sentenced appellant under the 2005 amendments following his first trial. At that time, the trial court applied enhancement factors to increase appellant's sentence from fifteen years to eighteen years for some convictions and twenty years for others. However, this court concluded that the trial court committed error in its sentencing when it applied enhancement factors that were not found by a jury. *See Willie Earl Brown, Jr.*, 2010 WL 4396490, at *20. For appellant's second sentencing, the trial court stated that it would apply the pre-2005 sentencing statutes, as it was required to do because appellant did not execute a waiver to allow the court to sentence him under the 2005 amendments. Application of the pre-2005 sentencing statutes resulted in an increase in the sentence length because Tennessee Code Annotated section 40-35-210(c) (2003) set the presumptive minimum sentence for a Class A felony at the midpoint of the range, which was twenty years in this case.

As for the length of the total effective sentence, the trial court imposed essentially the same sentencing alignment at the second trial as at the first. At both trials, the trial court ordered consecutive sentences for four counts, representing four types of sexual penetration, and ordered concurrent sentences for the remaining counts. *See id.* Therefore, the increase in the total effective sentence was due solely to the increase in the length of the individual sentences. As the trial court had a clear, affirmative reason for imposing the greater individual sentences, any presumption of judicial vindictiveness has been overcome, and appellant is without relief as to this issue.

## C. Consecutive Sentencing

Appellant argues that the trial court erred by imposing partial consecutive sentences based on Tennessee Code Annotated section 40-35-115(b)(5). Alternatively, he contends that his total effective sentence "is greater than that deserved for the offenses committed, and is not the least severe measure necessary to achieve the purposes for which the sentence is imposed." *See* Tenn. Code Ann. § 40-35-103 (2003).

The determination of whether to order consecutive rather than concurrent sentences is a matter primarily within the discretion of the trial court. *See State v. Hastings*, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999). The procedure is governed by Tennessee Code Annotated section 40-35-115, which lists the factors that are relevant to a trial court's sentencing decision. The court may order consecutive sentences if it finds by a preponderance of the evidence that one or more of the seven statutory criteria exists. Tenn. Code Ann. § 40-35-115(b) (2003). Imposition of consecutive sentences must be "justly deserved in relation to the seriousness of the offense." *Id*. § 40-35-102(1). The length of the

resulting consecutive sentence must be "no greater than that deserved for the offense committed." *Id.* § 40-35-103(2).

In this case, the trial court ordered partial consecutive sentences based on Tennessee Code Annotated section 40-35-115(b)(5), which provides the following criterion for imposing consecutive sentences:

> The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical[,] and mental damage to the victim or victims[.]

The trial court found that this criterion applied based on the facts that the offenses occurred over several years, appellant often acted as a caretaker for the victim and was considered by her to be an uncle, appellant told the victim not to tell anyone, many different sexual acts were involved, and the victim had received counseling and experienced behavioral issues. Based on our review of the record, the evidence does not preponderate against the trial court's decision. Furthermore, we conclude that the effective sentence is not greater than that deserved for the seriousness of the offenses and was the least severe measure necessary to achieve the purposes for which the sentence was imposed. *See* Tenn. Code Ann. § 40-35-103 (2003). Appellant is not entitled to relief on this issue.

## CONCLUSION

Based on our review of the record, the parties' briefs, and the applicable law, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE