STATE of Tennessee, Appellee,

v.

Charles BENTON, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

June 29, 1988.

W.J. Michael Cody, Atty. Gen., James W. Milam, Asst. Atty. Gen., Berkley Bell, Dist. Atty. Gen., Doug Godbee, Asst. Dist. Atty. Gen., for appellee.

Heiskell H. Winstead, Rogersville, for appellant.

## OPINION

BIRCH, Judge.

The defendant, a forty-three-year-old male, was convicted by jury in the Criminal Court of Hawkins County of two counts of aggravated rape and one count of aggravated sexual battery. The trial judge imposed Range II sentences to the Department of Correction of forty years in each of the two aggravated rape counts, and twenty years in the aggravated sexual battery count. One forty-year sentence is concurrent with the other; the twenty-year sentence is concurrent with both, for an effective sentence of forty years.

After extensive pretrial hearings, the trial judge entered the following orders:

1) That the defendant was competent to stand trial;

and

2) That the confession was admissible because voluntarily made.

The defendant insists that these rulings constitute reversible error.

We agree.

We reverse the judgments of conviction and remand the cause with instructions.

## THE FACTS

Although no question is raised about the sufficiency of the convicting evidence, the salient facts as reflected in the record reveal that a seven-year-old male whom we will call "S.T." spent the night of March 7, 1987, with defendant's family. Because sleeping space was in short supply, "S.T." had to sleep in defendant's bed with him. Sometime during the night, the defendant awakened "S.T.," penetrated him orally and anally, and performed fellatio on him. Some two weeks after the incident, the victim told his mother about this occurrence. She immediately contacted the Hawkins County Sheriff's Department.

The defendant was arrested and taken for questioning to the Sheriff's office, where Sheriff's Investigator Lawrence Smith and Ms. Sarah Morelock, a Department of Human Services investigator, prevailed upon defendant to confess.

The defendant mounted a defense based on insanity at the time of the commission of the crime; he produced, in addition to the court-appointed expert witnesses, lay testimony concerning his condition. The jury rejected this insanity defense.

## COMPETENCE TO STAND TRIAL

■ At the outset, we need to remember that the issue we are here concerned with is competence to stand trial, rather than

insanity at the time of the commission of the offense. The two are related, of course, but not the same.

Also, we acknowledge the added difficulty inherent in addressing issues of mental capacity such as are presented in the case at bar. With only the silent pages of the appellate record to rely on, we are deprived of the live action which often includes watching and listening to a defendant as he testifies. But in the instant case, we are no worse off than was the trial judge—for the defendant testified neither before, nor during, nor after trial.

Our task, therefore, is to determine whether considering all the facts and circumstances, this defendant whose body functions as a forty-three-year-old man and whose mind functions as a five-year-old child, is competent to stand trial.

The standard is well entrenched in our law, and is clearly enunciated in the case of *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

> ... test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.

Our Court has embraced the twin prongs of the *Dusky* standard. In the case of *Mackey v. State*, 537 S.W.2d 704 (Tenn. Crim.App.1975), *cert. den.* April 12, 1976, then Presiding Judge Mark Walker summarized as follows:

> Both Tennessee decisions and the federal constitution prohibit the trial of a defendant whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in preparing his defense. (citations omitted)

The record contains numerous references relating to the defendant's mental condition. We have condensed them; in some instances, we have re-stated them and attempted to bring them together for close comparison.

The defendant was referred by the court to the Nolachuckey–Holston Area Mental Health Center for testing and examination regarding his current level of intellectual and adaptive functioning, and to aid in assessing his ability to understand the legal charges pending against him. He was assigned to Kay Bartosz, MS, Licensed Psychological Examiner, for evaluation.

During the interview, Ms. Bartosz noted that defendant did not know why he was being charged, or why the police had arrested him. Defendant further stated that he had "no idea" why he was at the Mental Health Center or what they were going to do to him. *She observed that defendant was unable to answer most questions,* (emphasis added) and waited for his father to answer the questions for him. She observed no spontaneous behavior or verbalization during her contact with him.

His full scale WAIS–R [1] score was 47, a score which is exceeded by approximately 98% of the population.

The Vineland Adaptive Behavior Scale is used to measure skills in basic areas including communication and coping ability. Her findings regarding the defendant's performance on this scale are:

| Domain | Standard Score | Age Equivalent |
| --- | --- | --- |
| Communication | 20 | 4 yrs, 3 months |
| Daily living skills | 42 | 6 yrs, 11 months |
| Socialization | 48 | 6 yrs, 7 months |
| Adaptive behavior composite | 34 | 5 yrs, 9 months |

She concluded that "Mr. Benton's overall level of self-help skills is therefore roughly equivalent to the ability of an average five or six year old. *His ability to communicate is even poorer* (emphasis supplied); he is unable to read, write, or count, *and can only understand very simple verbal instructions.*" (emphasis supplied)

Ms. Toni Weems, an experienced psychiatric social worker who performs compe-

---

1. Weschler Adult Intelligence Scale–Revised; Verbal IQ = 51, Performance IQ = 54.

tency evaluations for the court, interviewed the defendant for the purpose of aiding the court to determine competence to stand trial. In preparation for defendant's evaluation, she reviewed Ms. Bartosz' findings. She testified that, based upon her interview, in her opinion, defendant does not understand the legal process nor does he understand the charges against him. She further testified that the defendant is incapable of assisting his lawyer in the preparation of his own defense, and is incapable of participating in his own defense.[2] She opined further that defendant is incapable of talking with a law enforcement officer without a lawyer being then present. She said also that the defendant is unable to remember dates, facts, or incidents.

Winston Kitchin, M.D., a board-certified psychiatrist and medical director of Nolachucky–Holston Mental Health Center, interviewed the defendant pursuant to court order to determine competence to stand trial. Prior to the interview, Dr. Kitchin reviewed the findings of Ms. Bartosz and Ms. Weems. He testified that the defendant was unable to give a detailed history of his childhood, his adult development, or social circumstances. Dr. Kitchin found him to have been oriented only to name, that is, he did not know the date, month, or year.

Dr. Kitchin found defendant's memory and concentration impaired and his judgment and insight very limited. He found the I.Q. score of 47 to be consistent with his findings. The psychiatrist said that the defendant is incapable of understanding the nature of the charges, and is incapable of assisting or participating in his defense in a meaningful or rational way. He further testified that the defendant would be no more capable of rationally discussing his case with the law enforcement officers than he would be discussing it with his attorney.

Dr. Kitchin diagnosed "moderate mental retardation." He stated that the defendant is incompetent now and will always be, since there is no known medical or psychological treatment that will restore him to a condition of competence.

The prosecution, in an effort to shake Dr. Kitchin's testimony, played a tape recording of the defendant's confession. After hearing the tape, Dr. Kitchin clung even more tenaciously to his opinion that the defendant is incompetent to answer questions by a police officer rationally or with understanding.

Additionally, the record reveals that the defendant intellectualizes as a child five to seven years old does. Efforts to educate him were abandoned after he attended his first (and only) day of school. Consequently, he is unable to read or write and reached age nine or ten before beginning to talk.

He does not know the colors of the American flag, the shape of a ball, or how to count to seven. The defendant does not know the meaning of the word "breakfast."

The record includes much information about the defendant's adaptive behavior and vocational ability. Despite his congenitally limited lifestyle, the defendant has been observed playing pool (but only eightball); driving a tractor (through the field, but not well enough to plow or to perform other farm tasks); operating a truck (but only to pull it from the driveway to the

---

2. We glean from the record that the examiner used a version of the McGarry Scale—a thirteen-point checklist, to aid in the competency evaluation:
1) Ability to appraise the legal defenses available
2) Level of unmanageable behavior
3) Quality of relating to attorney
4) Ability to plan legal strategy
5) Ability to appraise roles of various participants in courtroom proceedings
6) Understanding of courtroom proceedings
7) Appreciation of charges
8) Appreciation of range and nature of possible penalties
9) Ability to appraise likely outcomes
10) Capacity to disclose to attorney available pertinent facts surrounding defense
11) Capacity to challenge prosecution witness realistically
12) Capacity to testify relevantly
13) Manifestation of self-serving versus self-defeating motivation. Department of Health, Education, and Welfare, Pub. No. 73–9105 (Study conducted at Harvard Medical School by McGarry, et al., 1973).

carport); feeding livestock (but only when shown by an adult what to do); mowing the yard with a riding mower (but only with adult supervision); helping in the garden (but only if helped and watched by an adult). The defendant shaves and bathes himself and has always lived at home with his parents, who treat him as a child. Almost everything he does requires adult supervision. He must be watched constantly "just like a four or five year old kid." He is never allowed to go anywhere alone because he passes out almost every time he is in a crowd of people. He is unable to run a simple "go get" type of errand; that is, he "doesn't understand what you tell him and forgets before he gets to where he's a going."

We have considered the above facts and the entire record. We have applied the *Mackey* standards as to competence. In our view, the evidence preponderates against the finding of competence. We are, therefore, constrained to conclude that the defendant lacks the capacity to understand the nature and object of the proceedings against him, and has insufficient present ability to consult with counsel and to assist in preparing his defense.

## ADMISSIBILITY OF THE CONFESSION

■ For his next issue, defendant urges that he was unable to understand his constitutional privilege against self-incrimination—hence he could not knowingly waive it. He insists because of the foregoing that the confession was involuntary and that the trial judge should have suppressed it.

Our responsibility then, is to examine the particular facts and circumstances which produced the confession, and in the light of the totality of all the circumstances of the case, to determine whether the confession was the product of an essentially free and unconstrained choice by its maker.

The test is succinctly stated by Mr. Justice Frankfurther in the case of *Culombe*

*v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961), at page 602, 81 S.Ct. at page 1879,

> The ultimate test remains that which has been the only clearly established test in Anglo–American courts for two hundred years: the test of voluntariness.

Our society has progressed beyond the confession extracted while a single light bulb burned brightly above a defendant's head. No longer is physical mistreatment necessary to invalidate a confession. Subtler forms of coercion have appeared; they often seem just as effective as the roundly condemned tactics of yesteryear. Cases are numerous in which the free choice of the defendant has been overreached by promises of leniency, threats of punishment, or by sophisticated appeals to emotion.

Unlike those familiar cases in which the defendant's determination not to confess has been beaten down and broken, the confession issue in the case at bar requires us to determine whether the defendant had the capacity in the first place to form a will of his own and to reject the will of others. Stated differently, we need not determine whether the defendant was overreached, but only whether he was ever reached.

Before the confession in the instant case can be deemed voluntary, the defendant must have intelligently waived his *Miranda* rights. We recognize that no single factor such as age, education, or even mental retardation [3] is conclusive on the waiver issue; however, the cumulative effect of these factors as they combine to affect the defendant's capacity to comprehend the concept of waiver and its significance to him and to his defense is most significant.

To determine the waiver issue, Tennessee adheres to the totality of circumstances test as stated in the case of *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), at 374–75, 99 S.Ct. at 1758:

---

3. *See State v. Bell,* 690 S.W.2d 879 (Tenn.Crim. App.1985); *See generally* 8 A.L.R. 4th 16, 25 (1981).

The question of waiver must be determined on the particular facts and circumstances surrounding the case including the background, experience and conduct of the accused.

Because so much of the evidence probative of competence to stand trial is also probative of waiver of the confession, we will not attempt to repeat all of it. We have, however, considered all the evidence on the competency issue in our resolution of the confession issue, together with the evidence which applies to the confession issue alone.

Considering all of the facts and circumstances, and in view of our finding of incompetence to stand trial, we are of the opinion that the defendant was unable to rationally and intelligently grasp the concept of waiver as posing a profoundly critical choice. Thus he was as unable to form his own will as he was unable to reject the will of Sheriff Smith and Ms. Morelock, who were both obviously anxious to obtain defendant's confession.

Even if we were to adjudge the waiver issue against the defendant, we consider the confession still inadmissible because we disagree with the state's contention that the holding in the case of *Colorado v. Connelly*[4] supports a finding of voluntariness in the case at bar.

In ruling the confession admissible, the trial judge remarked

> In view of what I've said, I think pretty well comes within the ruling of *Colorado vs. Conley* [sic], which is a United States Supreme Court case decided this year ... and there the Supreme Court of the United States held a confession can not be held involuntary and therefore inadmissible under the due process clause unless it is linked to coercion by agents even though the confession might be prompted by a mental or emotional condition that prevents it from being a rational

intellect and a free will. So here there's no evidence of coercion of any kind.

The facts in the *Connelly* case are a gulf apart from those in the case at bar.

First, Connelly's mental problem was schizophrenia, a condition which, unlike defendant's, ebbed and flowed at intervals. The defendant's condition is static and never improves.

Second, Connelly was able to (and did) understand his *Miranda* rights. We hold that defendant was unable to comprehend his *Miranda* rights or to act on them.

Third, Connelly's "confession behavior" began when he approached an off-duty police officer on a public street, and, without any prompting, stated his desire to confess a murder he had committed. The Supreme Court held that these circumstances did not contain the predicate of coercion necessary to make the confession involuntary.

In the case at bar, the defendant was taken into custody, transported in a law enforcement vehicle to the Sheriff's Department, and subjected to questioning in spite of his retardation and the expressed desire of his father to be with him during the interrogation.

We think that by initiating the process which led to the confession in the manner shown by the evidence, the officers supplied the predicate of coercion necessary to allow the case at bar to avoid the grasp of *Connelly*.

We are convinced that the confession represents not the defendant's will, but that of his interrogators.[5]

Based on the foregoing and all of the facts and circumstances, we hold that the confession was not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment, the Fifth Amendment to the United States Constitution, and Article I, § 9 of the Constitution of the state of Tennessee.

---

4. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

5. In the case at bar, the jury did not have the benefit of the T.P.I.—CRIM. 37.08 instruction regarding confession, and they were not instructed as to the manner in which they were to receive the confession nor were they provided with the proper method of weighing it.

## VIDEO TAPE

■ For his final issue, the defendant contends that the trial court committed reversible error by permitting the introduction of the videotape of the victim. He says that the videotape is hearsay, and that it was not rendered admissible by any exception to the rule against hearsay.

On the other hand, the state contends that the statute [6] provides for the use of video-taped statements of the child victim in sex abuse proceedings.

In discussing the admissibility of the video-taped statement, the following occurred:

MR. WINSTEAD: In view of the Court's ruling in the *Broback* case, I want to renew my objection to this video.

THE COURT: Okay.

MR. WINSTEAD: Number one and number two; I think at this point that it's cumulative. The young man has already testified and we submit that it is ... at this point. It's an exception, we say ... the legislature is trying to make the hearsay rule but I submit that it is not admissible. Although, the Court had ruled earlier that ...

THE COURT: The only problem I with any of it is since the child testified fully and was cross examined, that's not contemplated [sic] by the statute. I think what's contemplated is that the child would not testify but present the video and then have the child be subject to cross examination. I'm thinking if that is creating any problem or make [sic] any difference?

MR. WINSTEAD: I don't think the legislature contemplated the use of the video in addition ...

THE COURT: In addition to the child.

GENERAL BELL: Your Honor, if ... I wanted to play the video in the event that [S.T.]'s [7] testimony if he got choked up and on some matters ...

THE COURT: He didn't.

GENERAL BELL: Okay, well, I thought maybe he wasn't clear. Of course, I'm up there asking questions. Sometimes I don't always hear the answers correctly. That was the only reason I offer it, your Honor, to complete the picture.

THE COURT: I'm ... I'm really worried and concerned that the reasons for the admission are gullible.

GENERAL BELL: Okay. Wait a minute Lawrence.

THE COURT: Now, if ... the only thing I could think that would make it relevant was the cross examination about the ...

GENERAL BELL: You know, putting words in his mouth?

THE COURT: Putting words in his mouth, perhaps to rebut that. That would be the only thing. I think perhaps it could be used for that purpose to show that ... that it ... that he wasn't ... lead to say all those things or that he was.

GENERAL BELL: Whatever.

THE COURT: All right.

MR. WINSTEAD: I would hold a continuing objection, your Honor.

Considering the procedural stage at which the video-taped statement was offered, its admission is not supported by the statute which created it, nor will the rules of evidence justify its admission.

First, Tenn.Code Ann. § 24–7–116 (1982), provides for admission of the video-taped statement as a substitute for the child victim's testimony, not as a supplement to it. In the case at bar, the video-taped statement was admitted after the child victim testified and was cross-examined.

Second, under general evidentiary rules, prior consistent statements may be admissible, as an exception to the rule against hearsay, to rehabilitate a witness when insinuations of recent fabrication have been made, or when deliberate falsehood has been implied.[8] But before prior consistent

6. Tenn.Code Ann. § 24–7–116 (1982).

7. The transcript refers to the victim by name.

8. *Mays v. State*, 495 S.W.2d 833 (Tenn.Crim.App. 1972); *Farmer v. State* 201 Tenn. 107, 296 S.W. 2d 879 (1957); Paine, *Tennessee Law of Evidence*, § 221 (1974).

**434**

statements become admissible, the witness' testimony must have been assailed or seriously questioned to the extent that the witness' credibility needs shoring up.

In the case at bar, there was no attack upon the victim's credibility; only the insinuation from a statement of defense counsel, unsupported by proof. The video-taped statement should not have been admitted upon such fragile a basis.

Its admission, however, in our opinion, was harmless error. Tennessee Rules of Appellate Procedure 36(b); Tennessee Rules of Criminal Procedure 52(a).

Because we believe the defendant to be incompetent to stand trial, and because we find the confession inadmissible, we reverse the convictions and vacate the resultant sentences. We remand the cause to the trial court. The attorney for the defendant will petition the trial court for judicial commitment under Tenn.Code Ann. § 33–5–305 (1982).

DWYER and REID, JJ., concur.